## No. 21614.

INDUSTRIAL COMMISSION OF COLORADO, ET AL.
*v.* LOUIS R. MILKA.
(410 P.2d 181)

Decided January 24, 1966.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Peter L. Dye, Assistant, for plaintiff in error Industrial Commission of Colorado.

Harold Clark Thompson, Alious Rockett, Francis L. Bury, Feay Burton Smith, Jr., for plaintiffs in error State Compensation Insurance Fund and Walker Brothers Lumber Company.

Murray, Hecox and Tolley, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This is a workmen's compensation case. Plaintiffs in error Industrial Commission of Colorado will be referred to as the Commission; State Compensation Insurance Fund as the Fund, and Walker Brothers Lumber Company as the employer. The injured employe, the defendant in error, will be referred to as the claimant.

Claim for compensation was denied in this case. The district court of El Paso County, in reviewing the action

of the Commission denying the claim, ordered compensation to be paid the claimant. The writ of error is directed to the judgment and order of the trial court reversing the Commission and ordering that an award of compensation be entered.

The facts are undisputed. The claimant was performing his regular duties at the place of business of the employer. He was lifting heavy sacks of cement, transferring them from one pallet to another. As he lifted one of the heavy sacks, he "hurt his back." In the report of the accident, the employer described the part of the person injured and extent of injury as "lower right back — possible dislocation of vertebra."

In the file certified by the Commission to the district court — although no oral medical testimony was presented at the Commission hearing — claimant's attending physician diagnosed the injury as "acute lumbosacral sprain." The physician also stated, "It is my professional opinion that there is a causal relationship between his lifting and back pain. It is further my professional opinion that back sprain produced by lifting or twisting produced trauma to the physical structure of the body." It is admitted — and much emphasis was placed thereon — that the claimant did not stumble or fall or receive an outward blow.

The sole issue raised in this writ of error is whether an amendment to the Workmen's Compensation Act passed by the legislature during the 1963 session (C.R.S. 1963, 81-2-9) precludes an award of compensation under the facts of this case. It is the contention of the Fund and of the Commission, in support of its refusal to make an award, that under the definitions in the amended act claimant did not sustain "an accident." The amended statute upon which the Fund and the Commission rely reads as follows:

"(1) The term 'accident' as used in this chapter shall mean and include one or more determinate act or acts of a traumatic nature, which caused an injury.

"(2) The term 'injury' or 'injuries' as used in this chapter shall mean and include only trauma to the physical structure of the body and such disease or infection as naturally results therefrom. The terms shall not be construed to include disability or death due to natural causes occurring while the employee is at work or occupational diseases including but not limited to the occupational diseases covered by chapter 81, article 18, Colorado Revised Statutes 1963."

All the parties to this writ of error agree that but for the amendment the back injury which claimant sustained in the instant case would be compensable under former decisions of this court. Prior to the 1963 amendment here under scrutiny, the statute did not contain any definition of the word "accident." But this court, in a series of decisions, has interpreted "accident" to mean an unexpected incident or event during the course of the employee's work from which an injury flows; or injury as the unexpected result of an employee's normal activities. See *Carroll v. Industrial Commission,* 69 Colo. 473, 195 Pac. 1097, 19 A.L.R. 107; *Central Surety and Insurance Corporation v. Industrial Commission,* 84 Colo. 481, 271 Pac. 617; *Keating v. Industrial Commission,* 105 Colo. 155, 95 P.2d 821.

In the Central Surety case we said, "To constitute an accidental injury it is not necessary that there should be anything extraordinary occurring in or about the work itself such as slipping or falling or being hit." Referring to the English doctrine enunciated in *Fenton v. Thorley,* (1903) App. Cas. at page 443, and quoting from 25 Harvard Law Review 340, this court said in the Carroll case, *supra:*

" 'Since the case of *Fenton v. Thorley,* nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. * * *' "

At the same time the Carroll case, *supra,* was decided, this court in *Prouse v. Industrial Commission,* 69 Colo. 382, 194 Pac. 625, also set down the underlying principle that in order to constitute an accident, the injury must arise from an occurrence traceable to a *definite time, place and cause.* (Emphasis added.)

The Commission and the Fund contend that the amendment by the General Assembly was intended to and did, in fact, alter the meaning of "accident" as that term came to be accepted by reason of our many decisions. They assert by use of the words "determinate act of traumatic nature," and the further definition of "injury" as "trauma to the physical structure" the legislature has said something different, designed to produce a different result from that which would obtain from following the law promulgated by our decisions. They contend that the legislature has overruled the "case law" so that it must now be shown that some demonstrative external violence was visited upon the body "causing a wounding, breaking, tearing, puncturing or disruption of the continuity of the body of the injured employee or his bodily tissue."

The claimant, on the other hand, asserts that the legislature has done nothing more than to adopt and to place into the act this court's determination of what is an accident. Claimant argues that the words "determinate act of a traumatic nature" mean simply an injury-producing act from an ascertainable event — exactly what has been required in our prior decisions. Thus is posed for our determination the following question:

*DID THE LEGISLATURE INTEND TO OVERRULE THE LAW INTERPRETING THE WORD "ACCIDENT" AS PRONOUNCED BY THIS COURT; AND DOES THE AMENDED ACT PRODUCE SUCH A RESULT?*

We answer the two-pronged question in the negative.

Both sides of the question — the Commission and Fund view that the legislature has narrowed the cover-

age heretofore allowed, and the claimant's contention that no such result can obtain by application of the facts to the words used in the act — emphasize the different interpretations that reasonable men can give to the language employed and points up the ambiguity created in the attempted definition. What then did the legislature intend? How can it be determined?

■ It is basic to our system of jurisprudence that in the interpretation of a statute courts may refer to the history of the act — in this case the particular amendment. See *Nicholas v. Denver & R.G.W.R. Co.*, 195 F.2d 428; *Haskell v. U. S.*, 241 F.2d 790, *cert. denied*, 354 U.S. 921, 77 S. Ct. 1379, 1 L. Ed.2d 1436.

■ When, as here, no evidence is introduced before the Commission as to what transpired before the legislature as the amendment progressed through the legislative process, this court may take judicial notice of its history, which is a matter of public record in the office of the Legislative Reference Service. See *In Re Senate Bill No. 95, etc.*, 146 Colo. 233, 361 P.2d 350.

The particular section under scrutiny herein was part of a lengthy piece of legislation known as Senate Bill 255 of the First Regular Session of the Forty-fourth General Assembly, designed to change the then existing Workmen's Compensation Act. As introduced the amendment in question read as follows:

"*Be It Enacted By The General Assembly Of The State of Colorado:*

"Section 1. Article 2 of chapter 81, Colorado Revised Statutes, 1953, as amended, is hereby amended BY THE ADDITION OF A NEW SECTION TO READ:

"81-2-9 Definitions. (1) The term 'accident' as used in this chapter shall mean and include a single or determinate act of a sudden, tangible and traumatic nature, which caused an injury.

"(2) The term 'injury' or 'injuries' as used in this chapter shall mean and include only physical violence to the physical structure of the body and such disease

or infection as naturally results therefrom. The terms shall not be construed to include disability or death due to emotional trauma, traumatic neurosis, or natural causes occurring while the employee is at work."

This bill, after being introduced in the Senate, was referred to the Committee on Labor, which, after its deliberations, reported it to the Senate floor with certain drastic amendments which had been suggested and adopted by the committee action. The bill, with recommended amendments giving it the language which it retained throughout its ultimate passage and signature by the Governor, was so radically different from that which was first introduced that the *intention not to overrule* our various prior decisions is apparent.

With the strong and unequivocal language used by the proponents who introduced the original bill, it might well be said that they, and those who induced the introduction of the amendment, if any, intended to fashion some change in the law as it had become through our court's interpretation. However, the fact remains that there was stricken from the act all the key words which would have had to be retained if there was to be any legislative overturning of our prior decisions. It is significant that the legislature refused to retain in the amendment the words "sudden" "tangible" "physical violence." Hence we may well ask — what is left that will support a proposition that a change in the rule announced by this court has been intended or effected?

In arriving at legislative intent, the language of an amendment must be construed in the light of previous decisions by courts of last resort construing the original act, it being presumed that the legislature when adopting an amendment had in mind such judicial construction; and *the construction placed on the language of the original act must be adhered to after an amendment thereof* which does not in any way change the particular language. If, after a statute has been interpreted, the legislature makes *radical changes* in

phraseology, an intention is thereby shown to establish a rule different from that announced by the court. See 82 C.J.S. 900, and cases cited in footnotes.

The General Assembly's rejection of language which would radically change the definition, its unwillingness to put into the definitions words which were at its command and which would leave no doubt as to an intention of requiring an outward, external, physical incident of a violent or tangible nature and its use of general terms such as "trauma to the body" and "traumatic nature" leads us to conclude that no change was intended.

■■ We hold that the amendment to the act, although providing for the first time therein legislative definitions of the words "accident" and "injuries" did not change the law and did not overrule our former decisions. The injury sustained by the claimant is compensable under our previous decisions and is also compensable under the legislative definitions.

The judgment of the trial court is affirmed and the cause is remanded with directions to remand to the Industrial Commission for entry of an award granting compensation.

MR. JUSTICE FRANTZ concurs in the result.