Representative Clifford Dodge Colorado House of Representatives State Capitol Denver, Colorado 80203
Dear Representative Dodge:
QUESTIONS PRESENTED AND CONCLUSIONS
In your letter of December 20, 1978, you asked three questions regarding the governance of the University of Colorado at Denver, hereinafter "UCD." The first question was as follows:
1. Would it be possible under section 5, article VIII to remove UCD as an institution under the jurisdiction of the State Board of Regents?
 Yes. From an examination of the language of the foregoing constitutional provision, a review of the legislative history and reference to case law interpreting both, I have concluded that the General Assembly may enact legislation altering the governance of UCD so long as those changes do not affect the governance of the University of Colorado Medical Center.
ANALYSIS
In determining whether article VIII, section 5 authorizes a statutory change in the governance of UCD, subsection (1) thereof is the critical focus of analysis. That subsection reads as follows:
 (1) The following educational institutions are declared to be state institutions of higher education: The university at Boulder, Colorado Springs, and Denver; the university at Fort Collins; the school of mines at Golden; and such other institutions of higher education as now exist or may hereafter be established by law if they are designated by law as state institutions.
 The establishment, management, and abolition of the state institutions shall be subject to the control of the state, under the provisions of the constitution and such laws and regulations as the general assembly may provide; except that the regents of the university at Boulder, Colorado Springs, and Denver may, whenever in their judgment the needs of that institution demand such action, establish, maintain, and conduct all or any part of the schools of medicine, dentistry, nursing, and pharmacy of the university, together with hospitals and supporting facilities and programs related to health, at Denver; and further, that nothing in this section shall be construed to prevent state educational institutions from giving temporary lecture courses in any part of the state, or conducting class excursions for the purpose of investigation and study; and provided further, that subject to prior approval by the general assembly, nothing in this section shall be construed to prevent the state institutions of higher education from hereafter establishing, maintaining, and conducting or disconducting centers, medical centers, or branches of such institutions in any part of the state.
(Emphasis added.)
The language contained in the first sentence of subsection (1) clearly indicates that UCD is expressly covered by the provisions of article VIII, section 5. The second sentence of subsection (1) in like manner clearly indicates the unambiguous intention to reserve to the General Assembly the right to establish, manage and abolish all higher educational institutions, enumerated in the foregoing sentence, including UCD.
It is a well settled rule of statutory construction that all words and phrases used in a legislative enactment be understood and construed according to their common usage. Colorado Fuel Iron Corp. v. Industrial Commission, 152 Colo. 256,381 P.2d 267 (1963); People v. Becker, 159 Colo. 562,413 P.2d 185 (1966). Applying this principle to the key words in subsection (1), i.e., establishment, management, abolition, shall and control, there is no question that the constitutional provision intended to give the legislature authority to alter the governance, operation and maintenance of colleges and universities as it deemed such changes appropriate.
For example, the establishment of an institution commonly means the right to effect its creation. People v.Bradley, 66 Colo. 186, 179 P. 871 (1919). Themanagement of an institution includes the authority to direct, control, govern, administer or oversee. Trozzo v.People, 51 Colo. 323, 117 P. 150 (1911). And the right toabolish an institution encompasses the right to abrogate, annul, or cancel the existence of said institution.Wilson v. People, 36 Colo. 418, 85 P. 187 (1906).
In addition, subsection (1) indicates that all Colorado higher educational institutions shall be subject to thecontrol of the General Assembly and such laws and regulations as it may provide. The word shall is mandatory in effect and conveys unqualified authority. Park Station, Inc.v. Hamilton, 554 P.2d 311 (Colo. 1976). Tocontrol is to have the right to exercise directing or governing influence. Trust Co. of New Jersey v.Greenwood Cemetery, 32 A.2d 519 (1943). It is therefore clear from the words chosen in subsection (1) that the constitutional provision was fully intended to grant to the General Assembly the right to create, direct, control, govern, administer, abrogate, annul, or cancel the institutional governance of the various higher educational institutions when such was deemed appropriate.
In order to verify this interpretation of legislative intent, I have examined the relevant legislative history. That analysis has served to reinforce my conclusion. It is a well-established practice in Colorado to consider relevant information about the historical background of an enactment in the course of making decisions about how it is to be construed and applied.Industrial Commission v. Milka, 159 Colo. 114, 410 P.2d 181
(1966); People ex rel. Griffith v. Scott, 52 Colo. 59,120 P. 126 (1911). In this case, article VIII, section 5 was a referred bill from the General Assembly and known as amendment 4 on the 1972 ballot. It was extensively debated in the General Assembly, and a legislative interim committee prepared an extensive report including its recommendations for the bill's passage. Organization of State Government, dated December 1971.
In defining the scope of the amendment, the Legislative Council Report stated, at page 8:
 In addition to enumerating certain institutions and their locations, the Committee submits new language specifying that other schools now existing or which may be established in the future shall also be recognized as state institutions if so designated by law. The proposed language continues by providing that the establishment and abolition of state institutions of higher education shall be subject to control by the General Assembly, state institutions may establish centers or branches of the parent institution anywhere in the state. The intent of the Committee is clear: The new language a) gives all institutions constitutional designation and b) gives the General Assembly the final authority in the establishment of state institutions of higher learning.
(Emphasis in original text.)
The above language makes it abundantly clear that the General Assembly fully intended to control the establishment and abolition of the various higher educational institutions. This desire to give the General Assembly authority over these educational institutions was a response to the special constitutional governance prerogatives of the Board of Regents. On page 6 of the Organization of State GovernmentReport, the interim committee stated:
 The Committee believes there are a number of compelling reasons for change in the present constitutional status of the University of Colorado. In a single general statement of the rationale, the following is an accurate observation:
 Divisions within the Board of Regents of the University of Colorado have been interpreted as contributing to unrest within the University and instability in the presidential office at the University. Inability of the legislature to modify the structure and essential powers of the Regents because of the Board's constitutional position has influenced the content and format of several proposals for restructuring of higher education more than have concepts of sound organization structure.
The special constitutional status of the Board of Regents was created by article IX, section 14 of the constitution. Prior to 1973, it provided as follows:
 The board of regents shall have the general supervision of the University and the exclusive control and direction of all funds of and appropriations to, the University.
A long history of case law had established that legislation which conflicted with this broad grant of constitutional authority was inapplicable. In re Inheritance Tax, Macky Estate,46 Colo. 79, 102 P. 1075 (1909); Burnside v. Regents,281 F. Supp. 280 (D. Colo. 1968). Thus, the only way to alter the grant of authority to the Regents was by constitutional amendment. Denver v. Rinker, 148 Colo. 441, 366 P.2d 548
(1961). Article VIII, section 5 was the means to that end. When it was ratified by the electorate, article IX, section 14 was simultaneously repealed.
Another aid in statutory construction is literature and statements addressed to the electorate when a legislative measure is submitted for voter approval. Armstrong v. Ford MotorCo., 109 Colo. 188, 123 P. 1018 (1942). When article VIII, section 5 was referred to the voters as amendment 4 in November of 1972, a ballot analysis was prepared by the Legislative Council. On page 8 of the ballot analysis, the Legislative Council state as follows:
 Governance of Higher Education The proposal places all educational institutions on an equal constitutional footing by extending general supervision of institutions and exclusive control of their funds to all governing boards. Of course, such control may be modified by legislative enactment. The proposed amendment also gives the legislature responsibility to provide by law for the coordination and planning of higher education and jurisdiction over the location and functions of schools. Finally, the proposed amendment recognizes two additional powers of the legislature: the establishment and abolishment of state institutions of higher education and the authority to approve the conduct of additional educational programs in new locations throughout the state by presently established colleges and universities.
(Emphasis added.)
The language in the second sentence of the analysis reveals the intent to modify governance of institutions by legislative enactment rather than constitutional amendment. It reiterates the intent to convey to the legislature the power to establish and abolish state institutions of higher education.
Later on page 8 the Legislative Council offered the following argument for adoption of the proposed amendment:
 (1) The grant of authority to schools and their governing boards for the control of funds and the establishment and conduct of centers and branches cannot be absolute. As a practical matter, it must be tempered and given overall direction by the General Assembly. The proposed amendment recognizes that the legislature has no desire to direct the internal affairs of the state's educational institutions. However, because of the increasing demands on state dollars, it is essential, in a broad sense, to carefully plan and manage state educational programs. This responsibility rests with the members of the General Assembly as elected representatives of the people.
(Emphasis added.)
The above language, therefore, makes it clear that the Legislature did not intend the governing boards of state higher education institutions to have absolute control. It also specifically expresses ultimate authority for the establishment, abolition, planning and management of state colleges and universities in the General Assembly as representatives of the people. As such no constitutional amendment need be adopted in order to alter governance of UCD.
2. Could another institution of higher education replace the University of Colorado at Denver, either under one of the existing governing boards or under a newly created board, but not under the governance of the State Board of Regents.
 Yes. Such a change would require that specific legislation to that end be promulgated by the General Assembly.
As was indicated in the response to Question 1, UCD can be altered or abolished by action of the General Assembly. However, the provisions of subsection (2) of article VIII, section 5 mandates specific legislation to accomplish such a purpose. The subsection reads as follows:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of an appropriations to their respective institutions unless otherwise provided by law.
Since the Board of Regents is the specific governing board having general supervision and control, its authority can only be circumscribed by a legislative enactment or constitutional amendment expressly aimed at doing so. Associated Studentsof University of Colorado v. Regents, 543 P.2d 59 (Colo. 1975).
3. If it is necessary under the constitution to have a branch of the University of Colorado at Denver, could the University of Colorado Medical Center be the institution designated as the University of Colorado at Denver?
 Yes. It should be noted that I do not agree with the assumption made in this question that the constitution requires the continued existence of an entity known as the University of Colorado at Denver. With that caveat, it is my opinion that article VIII, section 5 mandates the existence of the University of Colorado Medical Center at Denver and that said institution could be designated by the legislature as the University of Colorado at Denver.
The general grant of authority to the General Assembly to establish, maintain, and abolish higher education institutions as set forth in article VIII, section 5 contains one notable exception. The relevant language appears in subsection (1) and reads as follows:
 The Regents of the university at Boulder, Colorado Springs, and Denver may, whenever in their judgment the needs of that institution demand such action, establish, maintain and conduct all or any part of the school of medicine, dentistry, nursing, and pharmacy of the university together with hospitals and supporting facilities and programs related to health at Denver.
The above language constitutes an exception to the general reservation of rights in the General Assembly. By its use, the constitutional provision vested the right to control programs affecting the medical center at Denver in the Board of Regents.Proctor v. Graham, 32 Colo. App. 102, 506 P.2d 1236
(1973). As such, the general language conveying control of the governance of state institutions to the General Assembly is inapplicable to the Medical Center. People v. Burke,supra; Denver v. Rinker, 148 Colo. 441,366 P.2d 548 (1961).
SUMMARY
It would be constitutionally permissible for the legislature to remove UCD as an institution under the jurisdiction of the Board of Regents, and to create another institution of higher education to replace UCD.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER STATUTES
STATE AGENCIES
Colo. Const. art. VIII, § 5
Colo. Const. art. IX, § 14
LEGISLATIVE BRANCH House of Representatives HIGHER EDUCATION, DEPT. OF University of Colorado
The legislature may enact legislation altering the governance of UCD or abolishing UCD, as long as such legislation does not change governance of the University of Colorado Medical Center.