TOWN OF ORCHARD CITY and Leroy Hamilton, Jim C. McGraw, William Ebert, Dwight Benson, Harold A. Wick, Bud Hawkins and Jesse Messenger, Individually, Plaintiffs–Appellants,

v.

The BOARD OF DELTA COUNTY COMMISSIONERS OF the COUNTY OF DELTA, City of Delta, and the Municipalities of Delta, Hotchkiss, Paonia, Crawford, and Cedaredge, Defendants–Appellees.

No. 86SA44.

Supreme Court of Colorado, En Banc.

March 14, 1988.

Darrow & Helmsing, Gregg Helmsing, Delta, Griffiths & Tanoue, P.C., Susan K. Griffiths, P.C., Susan K. Griffiths, Denver, for plaintiffs-appellants.

John A. Brooks, Montrose, for defendant-appellee Bd. of Delta County Com'rs of Delta County.

John Kappa, Montrose, for defendants-appellees City of Delta and Towns of Crawford and Cedaredge.

Briscoe, Stanway, Clay, Dodson & Harper, James R. Briscoe, Hotchkiss, for defendants-appellees Towns of Hotchkiss and Paonia.

ERICKSON, Justice.

The plaintiffs below, Orchard City and seven individuals, brought suit in the District Court for the County of Delta challenging the exclusion of Orchard City from the distribution of sales tax revenue collected pursuant to the 1969 Delta County Sales Tax Resolution (Resolution). Before the trial court, the plaintiffs claimed that Delta County's exclusion of Orchard City from the distribution of sales tax revenue is prohibited by section 29–2–104(2), 12 C.R.S. (1977); denies Orchard City equal protection of the laws in violation of the fourteenth amendment of the United States Constitution; and is inequitable. The trial court granted the defendants' motion for summary judgment, denying the petitioners relief on all three claims. On appeal, the plaintiffs contend that the Resolution exceeded the statutory grant of authority giving Colorado counties the right to impose sales taxes and violates equal protection of the laws under the federal constitution. We accepted jurisdiction of this case pursuant to section 13–4–110, 6 C.R.S. (1973). For the reasons stated in this opinion, we reverse the district court and remand the case with directions to reinstate the claims.

## I.

Orchard City is a municipality located within Delta County, Colorado. In 1969, the voters of Delta County approved a 1% countywide sales tax. The Resolution of the Delta County Commission (Commission), which authorizes the tax, specifies that 65% of the tax revenue be distributed to Delta County and 35% be allocated, on a pro rata basis according to population, to the five municipalities named in the Resolution. The five municipalities included in the Resolution were Delta, Hotchkiss, Paonia, Crawford, and Cedaredge; Orchard City was not included and did not receive a share of the revenue. It was the only municipality Delta County excluded from the distribution.

Prior to submitting the 1969 Resolution to the voters, the Commission sought and obtained support from local municipalities within the county, including Orchard City. A member of the Commission told the Orchard City Board of Trustees that Orchard City was not being included in the distribution because it did not need the revenue. Some residents of Orchard City interpreted this statement as an assurance that if the need arose in the future, Orchard City would be entitled to a distribution.

According to the Resolution, the 65/35 distribution formula could only be amended with the approval of the voters. In 1981, Orchard City and the five municipalities that were receiving portions of the 35% municipal share asked the voters to authorize Orchard City to receive a distribution from the municipal share and to increase the municipal share to 45%. The voters rejected that proposal. In 1984, Orchard City asked the Commission to include it in the municipal share because circumstances had changed. The Commission refused. The plaintiffs then filed a petition for declaratory relief, listing the County of Delta and the five municipalities who were receiving sales tax revenue as defendants. The defendants, City of Delta, Towns of Cedaredge and Crawford, and the Board of Delta County Commissioners, filed a motion for summary judgment; the plaintiffs also filed a motion for summary judgment. The trial court granted the defendants' motion for summary judgment and the plaintiffs appealed.

## II.

The plaintiffs first contend that Delta County lacks authority to exclude Orchard City from the municipal distribution of the countywide sales tax revenue. In granting the defendants' motion for summary judgment, the trial court held that because section 29–2–104(2), 12 C.R.S. (1977), does not plainly prohibit exclusion of municipalities from distribution of revenue generated by county sales taxes, the distribution formula contained in the 1969 Resolution is not prohibited. To determine whether Delta County's exclusion of Orchard City from the distribution of sales tax revenue is statutorily authorized, we must ascertain the General Assembly's in-

tent in adopting section 29–2–104(2), which authorizes counties to share countywide sales tax revenue with municipalities that lie within the county. Section 29–2–104(2) provides:

> Such proposal [for a countywide sales tax, use tax, or both] shall contain a description of the tax in accordance with the provisions of this article and *shall make provision for any distribution of revenue collections between the county and the incorporated cities and towns within the county.* Such proposal shall also state the amount of tax to be imposed. Unless otherwise agreed to by the governing bodies of the county and municipalities within the county, any use tax proceeds shall be distributed among such county and municipalities in the same proportion as such sale tax proceeds distributed to each jurisdiction.

(Emphasis added.)[1]

In determining the legislative intent of ambiguous statutes, successive drafts of a bill may be used as a guide. *Industrial Comm'n v. Milka,* 159 Colo. 114, 410 P.2d 181 (1966); *Haines v. Colorado State Personnel Bd.,* 39 Colo.App. 459, 566 P.2d 1088 (1977); *see also Nicholas v. Denver & R.G.W.R. Co.,* 195 F.2d 428 (10th Cir.1952) (conference committee reports may be considered in determining the meaning of doubtful statutes). It was not until the General Assembly adopted H.B. 1141, 46th Sess., ch. 328, sec. 3, § 138–10–1, 1967 Colo.Sess.Laws 660, that Colorado counties were authorized to assess a county sales tax. The bill that was initially introduced in the House did not mention the use or distribution of revenue collected from a countywide sales tax. The House Finance Committee, however, entirely rewrote the bill. Section 4(2) of the Finance Committee's draft is virtually identical to the first sentence of section 29–2–104(2), except that instead of calling "for *any* distribution of revenue collections between the county" and its municipalities, it prescribed "*the* distribution of revenue collections between the county and the incorporated cities and

towns within the county." House Journal, 46th Sess., at 730 (1967) (emphasis added). The Senate version, which ultimately became law, not only substituted "*any* distribution" for "*the* distribution," *see* Senate Journal, 46th Sess., at 1119 (1967), but also omitted the sentence: "Unless otherwise specified within the proposal, sales tax revenue collections shall be distributed between the county and the incorporated cities and towns within the county on *the basis of point of collection.*" *See* House Journal, 46th Sess., at 730 (1967) (emphasis added).

The plaintiffs claim that the subsequent drafts of H.B. 1141 indicate that the General Assembly intended *all* municipalities in a county to share in any distribution of a countywide sales tax. We disagree. The amendments made by the Senate Local Government Committee which led to section 29–2–104(2) were critical and demonstrate that the General Assembly contemplated requiring counties to include all municipalities in the distribution of sales tax revenue, but then decided to abandon the requirement. This court will not ignore the General Assembly's substantial revisions of a bill to arrive at an interpretation that comports with earlier versions of that bill.

Interpreting section 29–2–104(2) as not requiring a county to include all incorporated municipalities in the distribution of sales tax revenue, however, does not permit a county to exercise its discretion in an arbitrary fashion. It is presumed that the General Assembly intends a just and reasonable result when it enacts a statute. § 2–4–201(1)(c), 1B C.R.S. (1980); *Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985). We therefore construe section 29–2–104(2) to require that any distribution of sales tax revenue by a county shall not arbitrarily exclude an incorporated municipality within the county.

### III.

The initial exclusion of Orchard City from the Resolution, in view of Or-

---

1. All but the last sentence of section 29–2–104(2) is identical to the statute in existence when the Delta County Sales Tax Resolution was adopted in 1969. *See* § 138–10–4, 7 C.R.S. (1967 Supp.). The last sentence was added in 1975. Ch. 262, sec. 4, § 29–2–104(2), 1975 Colo.Sess.Laws 962.

chard City's acquiescence, may not have been arbitrary, but the continued exclusion of Orchard City presents a different and more difficult question.[2] The plaintiffs argue that the exclusion of Orchard City from the municipal distribution of the countywide sales tax revenue violates equal protection of the laws under the fourteenth amendment of the United States Constitution because the distribution of revenue bears no rational relationship to any legislative purpose.[3] When, however, a constitutional question is not essential to the resolution of the issue before us, we will not address it. *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981); *Board of County Comm'rs v. City and County of Denver,* 194 Colo. 252, 571 P.2d 1094 (1977). In our view, Delta County did not comply with section 29–2–104(2), and for that reason it is not necessary for us to address the equal protection of the laws issue.

Delta County has no inherent sovereign authority, but only those powers expressly granted by the Colorado Constitution and statutes, and such incidental powers as are reasonably necessary to carry out the ex-

---

**2.** According to the record, prior to the Resolution being submitted to the voters, a Delta County Commissioner attended a meeting of the Orchard City Board of Trustees. The commissioner explained the terms of the Resolution to the Board, stating that Orchard City would not receive a distribution from the municipal share because Delta County was taking care of its roads. The commissioner indicated that once the county stopped maintaining Orchard City's roads, or if Orchard City were to become a "full-fledged town," Orchard City would receive a portion of the municipal share without the need of an election. Plaintiffs claim that based upon these representations, Orchard City did not object to being excluded from the Resolution. Since 1969, the scheme for funding road maintenance has changed and Orchard City must now perform its own road maintenance.

**3.** Defendants argue that the equal protection clause is not applicable to distribution of sales tax revenue. We disagree. The federal Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the equal protection clause of the Fourteenth Amendment." *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985). In *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049 (5th Cir.1984), the court relied upon the breadth of the equal protection clause in determining that a state's distribution of tax revenue must conform to the basic requirements of equal protection. *Id.* at 1056. The Fifth Circuit held that "in doling out its tax dollars, a state and its subordinate governing bodies stand in no constitutional twilight zone above the elemental commands of equal protection." *Id.* at 1058. *See generally* L. Tribe, *American Constitutional Law* § 16–3, at 1439 (2d ed. 1988) ("*any* governmental discrimination must be tested against the fundamental requirements of Equal Protection"); J. Nowak, R. Rotunda & J. Young, *Constitutional Law* § 16–I, at 585 (2d ed. 1983) ("the equal protection guarantee, however, governs all governmental actions which classify individuals for different benefits or burdens under the law").

An issue that was not raised by the defendants is the plaintiffs' standing to pursue their equal protection claim. In *Coleman v. Miller,* 307 U.S. 433, 441, 59 S.Ct. 972, 976, 83 L.Ed. 1385 (1939), the Supreme Court stated that "[b]eing but creatures of the State, municipal corporations have no standing ... to invoke the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator." *See also Williams v. Mayor of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); *United States v. Alabama,* 791 F.2d 1540 (11th Cir.1986); *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049 (5th Cir.1984). *But see City of S. Lake Tahoe v. California Tahoe Regional Planning Agency,* 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980); *Board of Educ. v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). Moreover, "the Fourteenth Amendment simply does not prescribe guidelines and impose restrictions upon one political subdivision vis-a-vis another political subdivision." *South Macomb Disposal v. Township of Washington,* 790 F.2d 500, 505 (6th Cir.1986); *see also Village of Arlington Heights v. Regional Transp. Auth.,* 653 F.2d 1149 (7th Cir.1981). Accordingly, Orchard City has no standing to assert that Delta County's Resolution violates the fourteenth amendment.

This, however, is not the case with the seven individual residents of Orchard City who claim that they have been denied equal protection of the laws due to Delta County's refusal to distribute to Orchard City any portion of the sales tax revenue to which they contributed. In our view, the individual plaintiffs have alleged "a distinct and palpable injury" to themselves, *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and meet the standing requirement under U.S. Const. art. III. *See Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

press powers. *Beaver Meadows v. Board of County Comm'rs,* 709 P.2d 928 (Colo. 1985); *Pennobscot, Inc. v. Board of County Comm'rs,* 642 P.2d 915 (Colo.1982). The Colorado Constitution provides:

> No provision of this constitution shall be construed to prevent the state or any political subdivision from giving direct or indirect financial support to any political subdivision as may be authorized by general statute.

Colo.Const. art. XI, § 7. Section 29-2-104(2) authorizes a county to distribute countywide sales tax revenue to municipalities, but precludes a county from arbitrarily excluding a municipality. Accordingly, if we conclude that Delta County arbitrarily excluded Orchard City, then the Resolution is *ultra vires.*

In discussing the equal protection claim, the defendants argue that the Resolution is not arbitrary because Orchard City has little need for revenue due to the low level of municipal services it provides and its failure to levy local taxes. Defendants point to Orchard City's original acquiescence to being excluded from the Resolution when approached by the Delta County Board of Commissioners. The defendants claim that in 1969 Orchard City had no need for sales tax revenue and for a number of reasons still has no need. According to the defendants, since Orchard City has no need for the sales tax revenue, Delta County has not arbitrarily excluded Orchard City.

We find the defendants' reasoning flawed for two reasons. Section 6(e) of the Resolution provides:

> In the event any new Cities or Towns are hereafter incorporated in Delta County, the Board of County Commissioners shall without a vote of the people amend Subsection 6-c to include such newly incorporated Cities or Towns and to give them their proportionate share of said 35% in the same manner as is provided for the existing Cities and Towns. The Board of County Commissioners shall have the authority to determine the population of any new City or Town until the first federal census thereof is taken and to forward the same to the Director of Revenue of the State of Colorado for calculating the distribution of said tax.[4]

Were Delta County's exclusion of Orchard City truly based upon need, the Resolution would not permit newly incorporated municipalities to receive a portion of the sales tax revenue without making any demonstration of need. Moreover, the record indicates that material issues of fact exist as to whether Orchard City has a need for the revenue.[5] Summary judgment is only

---

**4.** The formula for distribution of the sales tax revenue is set forth in paragraph 6 which states in pertinent part:

> The formula for the distribution of the tax proceeds shall be in the following proportions:
>
> (a) 65% to the COUNTY OF DELTA.
>
> (b) 35% to the five Cities and Towns in Delta County, namely Delta, Paonia, Hotchkiss, Cedaredge and Crawford.
>
> (c) Said 35% shall be distributed among said five Cities and Towns upon a ratio based upon the population of each City and Town to that of the combined total population of all five Cities and Towns as shown by the latest United States Census, the 35% allocated to said five Cities and Towns shall be distributed, until amended, in the manner set forth below, as follows:
>
> 61% thereof to the City of Delta, Colorado.
> 18% thereof to the Town of Paonia, Colorado.
> 9½% thereof to the Town of Hotchkiss, Colorado.
> 9% thereof to the town of Cedaredge, Colorado.

> 2½% thereof to the Town of Crawford, Colorado.

According to the 1980 Census, the municipalities of Delta County had the following populations:

| | |
|---|---|
| Delta | 3,931 |
| Orchard City | 1,914 |
| Paonia | 1,425 |
| Cedaredge | 1,184 |
| Hotchkiss | 849 |
| Crawford | 268 |

Were Orchard City included in that scheme, it would be entitled to the second largest distribution.

**5.** *See, e.g.,* note 2, *supra.* The trial court denied the plaintiffs equal protection claim stating "[t]he different treatment afforded the municipalities here could conceivably have been based on their proportionately greater need for governmental services." The record, however, discloses that material issues exist as to whether Orchard City needs additional revenue to maintain its support of city services. In our view, the record has not been adequately developed

proper where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168 (Colo.1987); *Bailey v. Clausen*, 192 Colo. 297, 557 P.2d 1207 (1976). Accordingly, we find that the trial court erred in granting the defendants' motion for summary judgment.

Defendants also argue that the Resolution is not arbitrary because there are several other legitimate purposes for the exclusion of Orchard City. Defendants claim that one such legitimate purpose is distributing sales tax revenue in a manner approved by local voters. This, however, begs the question in that voters also can create arbitrary and constitutionally offensive classifications. "When properly challenged such classifications must fall, notwithstanding their origin." *Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1054 n. 14 (5th Cir.1984). Other legitimate purposes advocated by the defendants include: distributing sales tax revenue in a manner that achieves a more equitable allocation of the costs of providing services; distributing revenue to those who impose their own local taxes; and distributing revenue to those municipalities that provide services to Orchard City's residents and to municipalities that have their own police department. Each of these purported legitimate purposes, however, suffers from the impediment of paragraph 6(e) of the Resolution, which automatically includes new municipalities in the distribution of revenue. In our view, the existence of this provision demonstrates that Delta County arbitrarily excluded Orchard City from the distribution of sales tax revenue. We conclude that the Resolution, which authorized Delta County to exclude Orchard City, was arbitrary and exceeded the authority conferred upon Delta County by the General Assembly because it violated section 29–2–104(2). *See Board of County Comm'rs v. City and County of Denver*, 194 Colo. 252, 571 P.2d 1094 (1977); *Board of County Comm'rs v. Love*, 172 Colo. 121, 470 P.2d 861 (1970).

on the issue of Orchard City's need for sales tax revenue to justify summary judgment. *See*

Accordingly, we reverse the district court's entry of summary judgment and remand for further proceedings consistent with this opinion.

*Mount Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231 (Colo.1984).