**FRANK M. HALL & COMPANY,**
**a Colorado corporation,**
**Petitioner,**

v.

**Rick NEWSOM, Respondent.**

**No. 04SC275.**

Supreme Court of Colorado,
En Banc.

Dec. 19, 2005.

Messner & Reeves, LLC, John K. Shunk, Ryan A. Williams, Denver, for Petitioner.

Lohf Shaiman Jacobs Hyman & Feiger, P.C., John C. Steele, Denver, Robert M. FitzGerald, Lakewood, for Respondent.

Pinnacol Assurance, Michael J. Steiner, Denver, for Amicus Curiae, Pinnacol Assurance.

Hall & Evans, LLC, Douglas J. Kotarek, Denver, for Amicus Curiae, Professional Independent Insurance Agents of Colorado.

Stettner, Miller and Cohn, P.C., Kate Raabe, Denver, for Amicus Curiae, Construction Industry Associations.

COATS, Justice.

Frank M. Hall & Company sought review of the court of appeals judgment upholding the denial of its motion for summary judgment, in a personal injury lawsuit brought by Rick Newsom. *See Newsom v. Frank M. Hall & Co.*, 101 P.3d 1107 (Colo.App.2004). The district court had rejected Hall & Company's assertion that it was immune from suit by Newsom because it was his employer within the meaning of the workers' compensation act. The court of appeals agreed, holding that Hall & Company did not qualify as Newsom's statutory employer because the subcontractor directly employing Newsom stood in relation to Hall as an independent contractor rather than its employee.

We understand section 8–41–401(1)(a), C.R.S. (2003), to relieve a general contractor of its liability as an employer, for the death or injury of a person to whom it contracts out work, whenever that person is engaged in an independent trade, occupation, profession, or business and is free from the general contractor's control and direction, without at the same time relieving the general contractor of liability for the subcontractor's employees. We therefore find that Hall & Company was liable, as Newsom's statutory employer, for the injuries he suffered and was correspondingly immune from a personal injury suit by him. Accordingly, the judgment of the court of appeals is reversed.

## I.

Rick Newsom filed suit against Frank M. Hall & Company, the general contractor on a construction project, for injuries he suffered while working on the project. Newsom was directly employed by Diamond Excavating, Inc., a subcontractor engaged by Hall & Company to perform excavation work on the project. After recovering from Diamond's workers' compensation carrier, Newsom filed suit against Hall. Hall moved for summary judgment on the ground that statutory workers' compensation was Newsom's exclusive remedy for his injuries. The district court

denied the motion, and the jury returned a special verdict finding Hall seventy-five percent negligent, ultimately resulting in a judgment in Newsom's favor for about $160,000.

Hall & Company moved for judgment notwithstanding the verdict and subsequently appealed the denial of its motions, but the court of appeals affirmed. The appellate court reasoned that according to the plain language of section 8–41–401(1)(a)(I), no company can be an employer of either a subcontractor or employees of the subcontractor if the subcontractor's independence is established according to the criteria enumerated in a cross-referenced section of the act defining the term "employee." In reaching that conclusion, the court of appeals rejected Hall's interpretation of the statutory scheme as contemplating that only an individual subcontractor himself, as distinguished from an entire business entity and that entity's employees, could be independent and free from the control and direction of the general contractor. Because the court of appeals also agreed that evidence in the record established Diamond's independence from Hall & Company under the criteria of section 8–40–202(2)(b), C.R.S. (2003), it affirmed the district court's rulings.

Hall then petitioned this court for a writ of certiorari.

## II.

We have previously described workers' compensation as having a primary purpose of providing a remedy for job-related injuries, without regard to fault. *Finlay v. Storage*

*Tech. Corp.*, 764 P.2d 62, 63 (Colo.1988); *see Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973). The statutory scheme was designed to grant an injured employee compensation from his or her employer without regard to negligence and, in return, the responsible employer would be granted immunity from common-law negligence liability. *Finlay* 764 P.2d at 63. This jurisdiction has long provided an extra layer of protection for the employees of subcontractors by imposing employer liability for their injury or death not only on the subcontractors by whom they are directly employed, but also on the companies contracting out work to those subcontractors. *See San Isabel Electric Assoc. v. Bramer*, 182 Colo. 15, 19, 510 P.2d 438, 440 (1973).

Since the major statutory reorganization of 1990, *see* ch. 62, sec. 1, Articles 40 to 47 of title 8, 1990 Colo. Sess. Laws 468–556 ("Workers' Compensation Act of Colorado"), the applicability of the workers' compensation act to contractors and lessees has been governed by part 4 of article 41 of title 8, of the revised statutes. As applicable here, section 8–41–401(1) specified that except for certain enumerated exceptions, any person, company, or corporation leasing or contracting out any part of its work would be construed to be an employer and liable to compensate the lessee, sublessee, contractor, or subcontractor, as well as its employees (or their dependents), for injuries or death resulting from that work. *See* § 8–41–401(1)(a).[1] In the next two, closely-related

---

1. Subsections 8–41–401(1)—(3), C.R.S. (2003), provide:

(1)(a) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer as defined in articles 40 to 47 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employees' dependents; except that no such person, company, or corporation shall be construed to be an employer and is not liable under articles 40 to 47 of this title:

(I) If such lessee, sublessee, contractor, or subcontractor has complied with section 8–40–202(2)(b) relative to such work;

(II) If the person working for such lessee, sublessee, contractor, or subcontractor is a working general partner or the sole proprietor of such lessee, sublessee, contractor, or subcontractor and is not covered under a policy of workers' compensation insurance; or

(III) If the corporate officer as defined in section 8–41–202(4)(a) or a member as defined in section 8–41–202(4)(b) working for such lessee, sublessee, contractor, or subcontractor has executed and filed an election to reject coverage under section 8–41–202(1).

(b) The employer, before commencing said work, shall insure and keep insured against all liability as provided in said articles, and such lessee, sublessee, contractor, or subcontractor,

subsections, the statute also made express that if such a subcontractor were itself an employer and insured its liability as required by the act, neither the subcontractor nor any of its employees would have any right of action against the person or company contracting out the work, *see* § 8–41–401(2); and that recovery for death or injuries according to the provisions of the act would not be available to designated individuals who maintained their independence from another by whom they were engaged to perform a service or who chose not to cover themselves, as permitted by the act, or be so covered by the corporation of which they were officers or the limited liability company of which they were members, *see* § 8–41–401(3).

Although subsection 401(2) of the statute would therefore appear to govern most directly the matter at issue here—whether an employee of a subcontractor was barred from pursuing a personal injury suit against a general contractor—that provision, by its own terms, applies only to the lessees, sublessees, contractors, and subcontractors described in subsection 401(1)(a). Since 1995, when subsection 401(1)(a) began to include exceptions to the class of subcontractors of whom the general contractor would be considered an employer, *see* ch. 112, sec. 3, § 8–41–401(1) and (3), 1995 Colo. Sess. Laws 343, 344, the scope of subsection 401(2)'s bar to actions against the general contractor has been correspondingly limited. At the time of Newsom's injury, subsection 401(1)(a) delineated three separate exceptions to employer liability. For a number of reasons, the language of the first of these three presents questions of interpretation not apparent in the other two.

Unlike the second and third exceptions to employer liability, which specifically refer to "persons" owning or holding particular positions in an organization or entity ("general partner," "sole proprietor," "corporate officer," "members [of limited liability companies]"), the first exception is couched in terms of the lessee, sublessee, contractor, or subcontractor itself. While the reference in the body of section 401(1)(a) to the recipient of leased or contracted-out work is clearly intended to include business entities having employees of their own, the exception applies, by its own terms, only to a subset of such recipients, which is limited to those who can establish that they perform their service independently within the meaning of subsection 8–40–202(2)(b), so as to be excluded from the broader definition of "employee" altogether. *See* § 8–41–401(1)(a)(I) (incorporating by reference § 8–40–202(2)(b)). The requirements for establishing "independence" or an "independent contractor relationship" within the meaning of subsection 8–40–202(2)(b), on their face, go beyond merely receiving leased or contracted-out work; and

as well as any employee thereof, shall be deemed employees as defined in said articles. The employer shall be entitled to recover the cost of such insurance from said lessee, sublessee, contractor, or subcontractor and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due said lessee, sublessee, contractor, or subcontractor.

(2) If said lessee, sublessee, contractor, or subcontractor is also an employer in the doing of such work and, before commencing such work, insures and keeps insured its liability for compensation as provided in articles 40 to 47 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind, including actions under section 8–41–203, against the person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof, or against its employees, servants, or agents.

(3) Notwithstanding any provision of this section or section 8–41–402 to the contrary, any individual who is excluded from the definition of employee pursuant to section 8–40–202(2), or a working general partner or sole proprietor who is not covered under a policy of workers' compensation insurance, or a corporate officer or member of a limited liability company who executes and files an election to reject coverage under 8–41–202(1) shall not have any cause of action of any kind under articles 40 to 47 of this title. Nothing in this section shall be construed to restrict the right of any such individual to elect to proceed against a third party in accordance with the provisions of section 8–41–203. The total amount of damages recoverable pursuant to any cause of action resulting from a work-related injury brought by such individual that would otherwise have been compensable under articles 40 to 47 of this title shall not exceed fifteen thousand dollars, except in any cause of action brought against another not in the same employ.

therefore, whatever the realities of practice in the construction industry may actually be, lessees, sublessees, contractors, or subcontractors are not automatically "independent contractors," as that term is now used in the statute.

The criteria of subsection 8–40–202(2)(b) for establishing independence, according to which the subcontractor exception of subsection 8–41–401(1)(a)(I) is defined, are expressed in terms of "individuals" or "service providers," who are expressly distinguished from their trade or business names. *See, e.g.,* § 8–40–202(2)(b)(II)("To prove independence it must be shown that the person for whom services are performed does not: ... (E) Provide more than minimal training for the individual; (F) Provide tools or benefits to the individual; ... (H) Pay the service provider personally instead of making checks payable to the trade or business name of such service provider ...."). In addition, the very definition of "employee," from which individuals meeting these criteria are excluded, is itself expressed in terms of "persons" in the service of other persons, associations of persons, firms, private corporations, or governmental agencies, departments, or offices, rather than the associations or entities themselves. *See* § 8–40–202(1). Because the term "employee" is used elsewhere without apparent distinction between business associations and individual natural persons, *see, e.g.,* § 8–41–401(1)(b) and (2), it would not be unreasonable to understand the term "individual" to include such entities, as the court of appeals has done; however, it also can hardly be considered unreasonable to infer, solely from the language of subsections 8–41–401(1)(a)(I) and 8–40–202(2)(b), that the delineated statutory criteria for "independence" describe a relationship that can only exist between individual persons and those for whom they provide services.

Furthermore, while subsection 8–41–401(1)(a) identifies three exceptions or situations in which a general contractor is not considered to "be an employer," it is far less precise about whom the general contractor is not considered the employer of. Unlike the statutory language creating the employer-employee relationship itself, which ex-

pressly extends beyond the subcontractor to include even the employees of subcontractors, *see* § 8–41–401(1)(a), (b), the exception relieving general contractors of employer liability for the death or injury of independent subcontractors makes no mention of any employees of those subcontractors. Even if subcontracting business entities could be capable of "compl[ying] with section 8–40–202(2)(b) relative to such work," as contemplated by subsection 8–41–401(1)(a)(I), it therefore remains far from clear that the statutory language also excepts the employees of such entities from an employer-employee relationship with the general contractor.

A substantial body of interpretative aids, either prescribed by the legislature itself, *see* title 2, article 4, C.R.S. (2005), or developed by courts, *see generally* Norman J. Singer, *Sutherland Statutory Construction* (6th ed.2000), exists to help resolve which of a number of competing reasonable constructions of particular statutory language actually embodies the legislative intent. Among them, we have often noted that a provision existing as part of a comprehensive statutory scheme must be understood, when possible, to harmonize the whole. *See Martinez v. People,* 69 P.3d 1029, 1033 (Colo.2003). In particular, the historical development of such a scheme can often shed light on the purposes behind specific amendments. *See City of Ouray v. Olin,* 761 P.2d 784, 788–89 (Colo. 1988). Although it may not be unreasonable to interpret the language of subsections 8–41–401(1)(a)(I) and 8–40–202(2)(b), standing alone, as relieving general contractors of their liability for the employees of independent subcontractors, even a cursory examination of the relevant developments can leave little doubt that this was not the legislative intent.

The first three subsections of section 8–41–401 all deal with slightly different, but interlocking, aspects of the same problem: the extent to which employer liability should be imposed upon persons and companies leasing or contracting out their work, and, correspondingly, the scope of the immunity from remedies other than workers' compensation to which they should be entitled. The funda-

mental employer-employee relationship between companies and the employees of their subcontractors, still embodied in subsection 401(1)(a), has existed in this jurisdiction for nearly a century. *See* ch. 210, sec. 49, 1919 Colo. Sess. Laws 700, 717–18. Since that time, the general assembly has continued to expand and refine the basic provision, often in response to appellate court interpretations, subdividing it and adding new provisions to clarify the scope and applicability of the relationship and the consequences of its existence or nonexistence.

Subsection 8–41–401(2) of the current statute came into being in 1963, in effect responding to and reversing the outcome otherwise required by a federal court interpretation of then-existing language. *See* ch. 180, sec. 3, § 81–9–1, 1963 Colo. Sess. Laws 640, 641–42; *see also Edwards v. Price,* 191 Colo. 46, 51 n. 9, 550 P.2d 856, 860 n. 9 (1976) (describing the new subsection as the legislature's response to *Thomas v. Farnsworth,* 286 F.2d 270 (10th Cir.1960)). In the absence of an express provision to the contrary, the federal court refused to construe the statute as immunizing a general contractor from a negligence suit by an employee of its subcontractor, even where the general contractor was a statutory employer of the subcontractor's employee and the subcontractor had insured its liability for the death or injury of its employee as required by statute. *Id.* at 273. The general assembly responded by adding language to make clear that if a subcontractor of whom the general contractor was deemed to be the employer kept insured its own liability for its employees as statutorily required, the general contractor would be considered to have fulfilled its obligation as an employer, and neither the subcontractor nor its employees would "have any right of contribution or action of any kind" against the general contractor. § 8–48–101(2), C.R.S. (1989) (currently § 8–41–401(2)). This provision remains unaltered today.

The forerunner of subsection 8–41–401(3), addressing the liability of general contractors for the principals of subcontracting businesses who chose not to cover themselves as employees of their own businesses, first appeared in 1987, also in the wake of an appellate court pronouncement construing the statute. *See* ch. 53, sec. 1, § 8–48–101, 1987 Colo. Sess. Laws 399 ("Concerning exemption of general contractors from liability under the 'Workmen's Compensation Act of Colorado' to individual employers, working partners, subcontractors, or sole proprietors who decline to insure themselves under a workmen's compensation policy"). Construing the existing language of subsection 401(2) as merely barring actions against a general contractor by subcontractors, or their employees, who were actually insured by the subcontractor, the court of appeals, in *Oliver Construction Co. v. Industrial Commission,* 680 P.2d 1308 (Colo.App.1983), held that the sole proprietor of a subcontracting business was not prohibited from seeking workers' compensation from the general contractor, even though the sole proprietor had exercised his statutory option not to cover himself as an employee of his own company. *See* § 8–44–102, C.R.S. (1973) ("If the employer desires, the contract *may* include by endorsement as an employee of the insured any working partner or individual employer actively engaged in the operation of the business.") (emphasis added). The general assembly responded by adding a new subsection (2.5), making express that an "individual employer, corporate officer, or working partner" who did not obtain coverage "for himself," as would have been his option by applicable statutory provisions, could not assert a claim under the workmen's compensation act and would have only a limited right to recover damages in other kinds of actions for work-related injuries. *See* § 8–48–101(2.5), C.R.S. (1989). The language of subsection 401(1)(a), creating the employer-employee relationship between general contractors and their subcontractors, was, however, not similarly modified at that time.

The precise characterization of the individuals specifically denied workmen's compensation claims in this provision underwent a series of amendments in the ensuing years, in apparent attempts to refine the classifications, reconcile them with related provisions of the scheme, and update statutory references rendered obsolete by recodification. In 1988, the term "independent contractor,"

which was specifically defined in terms of "persons," replaced the previous references to "individual employer," "working partner," and "corporate officer," and the special definition of "sole practitioner," but the central limitation to one who failed to obtain coverage "for himself" remained. *See* ch. 49, sec. 2, § 8–48–101, 1988 Colo. Sess. Laws 374–75. In 1990, however, with the recodification of the entire scheme, the words "for himself" dropped out, along with the obsolete statutory references it immediately preceded. *Compare* § 8–48–101, C.R.S. (1989); *with* ch. 62, sec. 1, Articles 40 to 47 of title 8, 1990 Colo. Sess. Laws 468, 481.

Whatever the intent behind that deletion (if any), subsection 8–41–401(3) was amended again in 1993, along with subsection 8–40–302(5), which it continued to incorporate by reference. *See* ch. 103, sec. 3, § 8–41–401(3), 1993 Colo. Sess. Laws 355, 358; ch. 129, sec. 1, § 8–40–302(5), 1993 Colo. Sess. Laws 455. This time both the term "independent contractor" and its special definition were replaced by a reference to individuals excluded as independent contractors from the amended definition of "employee" in section 8–40–202. Perhaps as significantly, with the simple insertion of the disjunction "or," the class of "individual(s)" denied workers' compensation under subsection 8–41–401(3) changed even more. Immediately before the 1993 amendment, subsection 401(3) applied only to independent contractors who failed to obtain insurance coverage; after the amendment, it effectively denied workers' compensation to any "individual" meeting subsection 8–40–202(2)(b)'s criteria for independence, and in addition, to any other "individual" who was statutorily permitted, but failed, to obtain worker's compensation insurance. By cross-reference, subsection 401(3) made clear that the other "individuals" to whom it referred were working general partners and sole proprietors, *see* § 8–40–302(5)(b), C.R.S. (2005), and corporate officers and members of limited liability companies, *see* § 8–41–202, C.R.S. (2005), not electing coverage for themselves.

While some version of subsection 8–41–401(3) expressly barring particular subcontractors or their officers from workers' compensation claims has existed since 1987, no exception to the employer-employee relationship established in subsection 401(1) accounted for the addition of subsection 401(3) (or its forerunners), until 1995. At that time, a proviso was added to subsection 401(1), excepting from the employer-employee relationship altogether those individuals who were denied workers' compensation claims under subsection 401(3)'s newly-adopted definition of independent contractor. *See* ch. 112, sec. 3, § 8–41–401(1) and (3), 1995 Colo. Sess. Laws 343, 344. That proviso failed, however, to account for any of the other individuals denied the right to workers' compensation for failing to obtain insurance coverage. Finally, in 1996 both subsections 401(1) and (3) were amended to delineate, as three separate categories (independent contractors according to section 8–40–202(2)(b); working general partners and sole proprietors who failed to cover themselves; and corporate officers and members of limited liability companies who rejected coverage), each class of individuals excepted from the statutory employer-employee relationship of subsection 401(1), and therefore all those denied a right to pursue workers' compensation claims against a general contractor under subsection 401(3). *See* ch. 137, sec. 2, § 8–41–401(1) and (3), 1996 Colo. Sess. Laws 646, 647.

■ The development of what is now codified as section 8–41–401, taken step-by-step, evidences consistent (if not always effective or sufficient) attempts by the general assembly to maintain the liability long-imposed on general contractors for the employees of subcontractors, without saddling them with liability for individuals who made business choices to personally remain outside the employer-employee relationship, or at least to avoid coverage as employees of their own businesses. Circuitous as that development may at times appear, it has unfolded in a single direction, without any indication that the general assembly had abandoned its efforts to prevent employers from avoiding responsibility for their workers by leasing or contracting out work, rather than simply hiring them as employees. *See Finlay*, 764 P.2d at 63. A presumption against implied repeal or amendment of existing statutes, *see Fuhrer v. Dept. of Motor Vehicles*, 197 Colo.

325, 328, 592 P.2d 402, 404 (Colo.1979), militates against construing exceptions to the original act any more broadly than expressly declared or necessarily implied. *See Industrial Commission v. Milka,* 159 Colo. 114, 120–21, 410 P.2d 181, 184 (Colo.1966); *see generally* 1A Norman J. Singer, *Sutherland Statutory Construction,* § 22:30, at 369–70 (6th ed.2000).

■ Subsequent legislative acts certainly cannot dispositively interpret earlier ones for the courts, but subsequent clarification of ambiguous legislation is one accepted aid to the discovery of legislative intent. *See e.g., Douglas Cty. Bd. v. Fidelity Castle Pines,* 890 P.2d 119, 125 (Colo.1995); *Rickstrew v. People,* 822 P.2d 505, 508 (Colo.1991); *People v. Davis,* 794 P.2d 159, 181 (Colo.1990); *see generally,* 1A Norman J. Singer, *Sutherland Statutory Construction,* § 22:30, at 380 (6th ed.2000) (especially where the amendment was adopted soon after the interpretive controversy arose and was for the purpose of making plain what the legislation had been all along). In response to the court of appeals construction of section 8–41–401, as permitting subcontracting business entities to qualify as independent contractors and, at one and the same time, destroy the statutory employer-employee relationship between their employees and their general contractors, the legislature responded quickly and decisively. *See* ch. 288, sec. 1, § 8–41–401(1), 2004 Colo. Sess. Laws 1078–79. Within months, the general assembly had expressly disapproved of the court of appeals interpre-

tation, by name.[2] It also made even more clear the linkage it intended between subsections 401(1) and (3), by replacing the three separately articulated exceptions in the former with a direct cross-reference to the latter.[3] Although section 401 continues to treat business entities as the "employees" of their general contractors, subjecting general contractors to liability for such subcontracting entities and their employees and simultaneously barring actions against general contractors by them, *see* § 8–41–401(1)(b), (2), the statute now removes any doubt that the legislature intends to except from the employer-employee relationship, as independent contractors, only those subcontractors who are natural persons and are themselves acting independently within the meaning of section 8–40–202.

Because the language of subsection 8–41–401(1)(a)(I), C.R.S. (2003), and subsection 8–40–202(2)(b) (expressly incorporated by reference), lends itself to more than one reasonable interpretation, it is appropriate to examine the legislative history of the these statutes, as well as the greater statutory scheme of which they are a part, to discover the actual legislative intent behind that language. It is clear from the development of the scheme as a whole, and these provisions in particular, that the legislature did not intend to strip a subcontractor's employees of any additional protection afforded by the general contractor, whether or not the subcontractor himself satisfies the conditions of subsection 8–40–202(2)(b) establishing his in-

**2.** Subsection 8–41–401(1) was amended to include a new subsection (a.5) which read:

> The general assembly hereby finds and determines that the decision of the Colorado Court of Appeals in the case of *Newsom v. Frank M. Hall & Co.,* No. 02CA1375[, 101 P.3d 1107] (February 26, 2004), in which the court held that an independent contractor may be an entity other than a natural person, did not accurately reflect the intent of the general assembly when it passed Senate Bill 93–132 and Senate Bill 95–072.

*See* ch. 288, sec. 1, § 8–41–401(1), 2004 Colo. Sess. Laws 1078–79.

**3.** " . . . except ~~that no such person, company, or corporation shall be construed to be an employer and is not liable under articles 40 to 47 of this title:~~ AS OTHERWISE PROVIDED IN SUBSECTION (3) OF THIS SECTION.

~~(I) If such lessee, sublessee, contractor, or subcontractor has complied with section 8–40–202(2)(b) relative to such work;~~

~~(II) If the person working for such lessee, sublessee, contractor, or subcontractor is a working general partner or the sole proprietor of such lessee, sublessee, contractor, or subcontractor and is not covered under a policy of workers' compensation insurance; or~~

~~(III) If the corporate officer as defined in section 8–41–202(4)(a) or a member as defined in section 8–41–202(4)(b) working for such lessee, sublessee, contractor, or subcontractor has executed and filed an election to reject coverage under section 8–41–202(1).~~

*See* ch. 288, sec. 1, § 8–41–401(1), 2004 Colo. Sess. Laws 1078–79.

dependence. As the employee, of a subcontractor that kept insured its liability for compensation, and for whom the general contractor was liable as a statutory employer, Newsom had "no right of contribution or action of any kind" against Hall & Company. § 8–41–401(2).

## III.

Because Hall & Company was liable, as Newsom's statutory employer, for the injuries he suffered and was correspondingly immune from a personal injury suit by him, the district court erred in denying Hall's motion for summary judgment. The judgment of the court of appeals is therefore reversed and the case remanded for further proceedings consistent with this opinion.