**Michelle SNYDER, Petitioner,**

**v.**

**JEFFERSON COUNTY SCHOOL DISTRICT R–1 and the Board of Education of Jefferson County School District R–1, Respondents.**

**No. 91SC502.**

Supreme Court of Colorado,
En Banc.

Dec. 14, 1992.

Rehearing Denied Jan. 11, 1993.

Larry F. Hobbs, Denver, for petitioner.

Caplan and Earnest, Gerald A. Caplan, Alexander Halpern, Alan J. Canner, Boulder, for respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Snyder v. Jefferson County School District R–1*, 821 P.2d 840 (Colo.App.1991), the Colorado Court of Appeals affirmed the order of respondent, the Jefferson County School District No. R–1 Board of Education (the school board), dismissing the petitioner, Michelle Snyder, from a tenure teacher position for "other good and just cause," pursuant to section 22–63–116, 9 C.R.S. (1988), of the Teacher Employment, Dismissal, and Tenure Act of 1967, §§ 22–63–101 to –118, 9 C.R.S. (1988) (the 1967 Act). The Court of Appeals concluded that the school board's decision was fully warranted by evidentiary findings made by an Administrative Law Judge (ALJ) at the conclusion of a tenure teacher dismissal hearing, had a reasonable basis in law, and did not constitute an abuse of discretion. We affirm the judgment of the Court of Appeals.

## I

The following facts are essentially undisputed. From 1969 until 1983, Snyder was employed by respondent, Jefferson County School District R–1 (the district), as a male teacher named Gerald Max Snyder. In 1975, Snyder began medical treatments in order to appear feminine. By the end of the 1982–83 school year, after a year of therapy with a psychotherapist experienced in dealing with transsexual patients, Snyder had decided to undergo sex-reassignment surgery. As part of the pre-surgery procedure, Snyder moved to California for one year after the 1982–83 school year to

engage in the role of a female in a test to confirm the decision to undergo the contemplated surgery.

In June 1983, the district sent a letter stating that the teaching certificate held by Snyder was due to expire on December 30, 1983. On August 15, 1983, Snyder sent a letter to the district stating that Snyder would not return to teach in the fall because of health reasons.[1] Snyder was subsequently granted leave with pay.

On December 1, 1983, the district sent a letter to Snyder stating that it was prohibited from paying Snyder in the absence of a current teaching certificate and that Snyder would be suspended without pay effective January 2, 1984, in the event such a certificate were not obtained.

Snyder responded by a letter dated December 21, 1983, which contained the following statements:

I have a problem. I am on sick leave. Because of my condition I have been unable to complete the requirements for renewing my certificate. I ask that I be allowed to continue on sick leave with pay.

I am aware that I must renew my certificate before I can return to my active teaching position.

On December 30, 1983, Snyder's teaching certificate expired. On January 4, 1984, the district sent a letter to Snyder stating in part as follows:

We will place you on sick leave through January 18, 1984 at which time you will have exhausted all your accrued sick leave. You will then be placed on an unpaid leave for the balance of the 1983–84 school year. You are not eligible to remain in pay status or return to teaching without a valid current Colorado teaching certificate on file in the Personnel Office.

On August 14, 1984, Snyder elected not to return to work in the fall, informed the district of the fact, and asked the district to indicate an appropriate later return date. On August 31, 1984, the district's employ-

ment director sent Snyder a letter that stated in pertinent part as follows:

We do not wish to terminate an employee, however the terms of your leave do require that you return to teaching in the District the beginning of the 1984–85 school year.

In order to extend your leave I will need the necessary medical information and a written request requesting the continuation of your leave based on personal health reasons.

If you are not currently certified as a teacher in Colorado, you will not be employed by the District.

On September 4, 1984, Snyder sent a letter to the district, signed "Michelle Marie Snyder formerly Gerald Max Snyder,"[2] requesting continued leave without pay for personal health reasons and stating that she intended to return to her teaching position in January 1985. Snyder's communication contained a letter from two therapists briefly describing Snyder's past medical treatments, indicating that Snyder intended to pursue sex-reassignment surgery, stating that the surgery would be completed in the fall of 1984, and opining that Snyder would be able to resume teaching in January of 1985. This letter constituted Snyder's first notification to the district that she was assuming a new sexual role.

On September 24, 1984, the district sent a letter to Snyder denying her request for extended leave without pay. The letter also informed Snyder that a junior high school teaching position was being held for her, commencing October 9, 1984; that she must have a valid teaching certificate upon reporting; and that she must respond no later than September 28, 1984, indicating whether she accepted the assignment.

Snyder received this letter the day before she entered a hospital for cosmetic surgery. For approximately two weeks thereafter she was heavily medicated and under nursing care. On October 8, 1984, Snyder sent a letter to the district superintendent requesting her position or compensation for

---

1. The letter did not specify the reasons for Snyder's leave.

2. Snyder had signed all prior letters sent to the district as "Gerald Max Snyder."

loss of her position. By the time the district received this letter, it had hired another teacher for the junior high school position in question.

On November 6, 1984, sex-reassignment surgery was performed on Snyder. On November 8, 1984, the district's assistant superintendent of personnel services, Charles E. Rufien, wrote a letter to Snyder containing the following statements:

> Although you have been informed of the lapse of your teaching certificate and been requested to renew it, the Teacher Education and Certification Division of the Colorado Department of Education has informed me that they have no record of any application for recertification on your behalf.
>
> The School District cannot employ or pay teachers who lack proper licensing and certification. I request, therefore, that you meet with me no later than Friday, November 16, 1984, to present evidence that you possess a valid Colorado, teaching certificate. If the certificate is not presented by that date, I will assume that you have not been recertified as indicated in the records of the Department of Education and your employment in the District will, therefore, be terminated effective October 9, 1984.

Rufien and Snyder ultimately met on November 26, 1984. At the meeting, Rufien asked Snyder whether she held a valid teaching certificate. Snyder said she did not. The next day, November 27, 1984, Rufien sent a letter to Snyder stating that her teaching position with the district was terminated effective October 9, 1984.

From November 26, 1984, to December 17, 1984, Snyder completed the course work necessary to renew her teaching certificate. On December 20, 1984, Rufien signed a Colorado Department of Education form attesting that the information stated by Snyder on her application to the Department for re-certification was correct to the best of his knowledge. Later that day the board met and ratified Snyder's termination based on her lack of a valid teaching certificate. Although Rufien was present at the meeting, he did not inform the school board that Snyder had completed all course work necessary for re-certification or that Snyder had requested continued leave without pay for health reasons. Snyder was granted a new teaching certificate effective January 14, 1985.

After unsuccessfully seeking judicial review of her dismissal,[3] Snyder filed a civil action in the Jefferson County District Court in June 1986 alleging, *inter alia*, that the district's failure to afford her a hearing on her dismissal violated constitutional due process standards. Concluding that Snyder was a tenure teacher on the date she was dismissed, the district court ordered the district to conduct a dismissal hearing pursuant to section 22–63–117, 9 C.R.S. (1973 & 1987 Supp.)[4]

On May 5, 1988, the district's superintendent filed a written recommendation for Snyder's dismissal on the grounds of incompetency, insubordination and other good and just cause. *See* § 22–63–117(2), 9A C.R.S. (1988). The recommendation for dismissal on the ground of other good and just cause was based on the assertion that Snyder failed to hold a teaching certificate at the time she had been required to report for work on October 9, 1984, as a junior high school teacher.

After conducting an evidentiary hearing, the ALJ determined that at all pertinent times in 1984 the district's policy did not specifically provide for termination of a teacher whose teaching certificate had expired; that the district's December 1, 1983, letter stated that Snyder would be suspended without pay if a renewed certificate were not received by January 2, 1984; and that form letters then used by the district to remind teachers of the need for re-certification stated that if a teacher were not certified, he or she would not receive com-

---

3. *See Snyder v. Jefferson County Sch. Dist. No. 1,* 707 P.2d 1049, 1050 (Colo.App.1985).

4. This court subsequently held that such a hearing is required when the asserted ground for dismissal of a tenure teacher is the absence of a valid teaching certificate. *Frey v. Adams County Sch. Dist. No. 14,* 804 P.2d 851, 855 (Colo.1991).

pensation or be allowed to report to work.[5] The ALJ also found that under the district's procedures then in effect the district was required to make verbal contact with the teacher "to confirm the facts or circumstances relative to [certification]" prior to sending a final letter regarding re-certification; that the district's policies provided that if, after such verbal contact, it appeared that a teacher were not certifiable, the teacher would be instructed not to report to work and informed that he or she would no longer be in a pay status with the district; and that under these policies and procedures, when a teacher was suspended without pay for failure to hold a valid teaching certificate, the district continued to recognize the underlying employment relationship.

The ALJ made the determination that because by December 20, 1984, Snyder had completed all work necessary to obtain a valid teacher certificate, the school board had no basis to dismiss her for other good and just cause on that date. The ALJ also concluded that the evidence did not support the district's allegations of incompetency and insubordination. The ALJ, therefore, recommended that Snyder be retained.

On December 15, 1988, the school board met and heard oral arguments from counsel for both Snyder and the district. After deliberating for fifteen minutes, the school board adopted a resolution determining that the findings of evidentiary fact made by the ALJ were supported by substantial and competent evidence and that those findings supported the conclusion that Snyder should be dismissed on the grounds of incompetency, insubordination, and other good and just cause. The school board ordered Snyder's dismissal. The school board also denied Snyder's request for back pay from January 14, 1985, to September 30, 1988.

Snyder appealed the school board's order. The Court of Appeals initially dismissed the appeal for lack of jurisdiction on the ground that, as that court had determined in *Frey v. Adams County School District No. 14*, 771 P.2d 27 (Colo.App. 1989), *aff'd on other grounds*, 804 P.2d 851 (Colo.1991), a person such as Snyder who was dismissed for failing to possess a valid teaching certificate was not a teacher for purposes of the 1967 Act. *Snyder v. Jefferson County Sch. Dist. R-1*, No. 89CA116, slip op. at 1–2 (Colo.App. Mar. 29, 1990) (not selected for official publication). On certiorari review, we vacated the judgment of dismissal and remanded the case to the Court of Appeals for further proceedings in light of our decision in *Frey*. *Snyder v. Jefferson County Sch. Dist. R-1*, 805 P.2d 443, 444 (Colo.1991).

On remand, the Court of Appeals affirmed the school board's order of dismissal, but reversed its denial of Snyder's request for back pay.[6] The Court of Appeals concluded that in view of the ALJ's factual finding that Snyder did not have a valid teaching certificate and was not on medical leave when she failed to report to the school to which she had been assigned, the school board's conclusion that the lapse in her teaching certificate constituted other good and just cause for dismissal was warranted. Because of this conclusion, the court did not address Snyder's arguments regarding the school board's reliance on the grounds of incompetency and insubordination to support its order of dismissal.

## II

As an initial matter, we must determine the proper standard of appellate review applicable to the school board's order. At the time of Snyder's tenure teacher dismissal proceeding, the 1967 Act directed

---

**5.** The ALJ made the following findings in this regard:

> Under unusual circumstances, the District will terminate a teacher who has not been recertified. Since 1980, such a termination has occurred in only two instances. The circumstances the District considers involve the nature of the work to be completed before certification: if certification can be completed

quickly, unusual circumstances do not exist and a teacher will be suspended rather than terminated. Termination for failure to have a certificate is a rare occurrence in the District.

**6.** The question of the propriety of this portion of the Court of Appeals decision is not before this court.

the Court of Appeals to apply the standard of review embodied in the State Administrative Procedure Act when considering a teacher's appeal of a school board.[7] § 22–63–117(11), 9 C.R.S. (1988). The Court of Appeals applied that standard of review in affirming the school board's ruling here.

On July 1, 1990, the 1967 Act was repealed and reenacted as the Teacher Employment, Compensation, and Dismissal Act of 1990, §§ 22–63–101 to –403, 9 C.R.S. (1990 Supp.) (the 1990 Act). The 1990 Act provides the following standard of appellate review of a school board's decision to dismiss a tenure teacher over the recommendation of a hearing officer that the teacher be retained:

> [T]he court of appeals shall either affirm the decision of the board or affirm the recommendation of the hearing officer, based upon the court's review of the record as a whole and the court's own judgment as to whether the board's decision or the hearing officer's recommendation has more support in the record as a whole.

§ 22–63–302(10)(c), 9 C.R.S. (1990 Supp.).[8]

Snyder argues that the standard of review established by the 1990 Act is applicable to the circumstances in this case. We disagree.

■ Our primary task in construing a statute is to give effect to the General Assembly's intent. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991); *Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63, 67 (Colo.1990); *Kane v. Town of Estes Park,* 786 P.2d 412, 415 (Colo.1990). To determine that intent, we first look to the statutory language. *Woodsmall,* 800 P.2d at 67; *Kane,* 786 P.2d at 415. When the language is clear and unambiguous, we must apply the statute as written. *Jones v. Cox,* 828 P.2d 218, 221 (Colo.1992); *Griffin v. S.W. Devanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989). In interpreting a comprehensive legislative scheme, we must give meaning to all portions thereof and construe the statutory provisions to further the legislative intent. *A.B. Hirschfeld Press, Inc. v. Denver,* 806 P.2d 917, 920 (Colo.1991).

The 1990 Act provides that the appellate review standard in section 22–63–302(10)(c) applies "[i]f the board dismisses the teacher pursuant to the provisions of subsection (9) of this section...." § 22–63–302(10)(a), 9 C.R.S. (1990 Supp.). This language establishes that the appellate review provision in the 1990 Act is limited to dismissal proceedings pursuant to the 1990 Act.[9] *See Loredo v. Denver Pub. Sch. Dist. No. 1,* 827 P.2d 633, 633–34 (Colo.App.1992).

Furthermore, the 1990 Act contains certain procedural provisions governing the conduct of dismissal proceedings not found in the 1967 Act. It provides that "[n]either party shall be allowed to take depositions of the other party's witnesses or to submit interrogatories to the other party," § 22–63–302(6)(b), 9 C.R.S. (1990 Supp.); that "[t]he procedures for the conduct of the hearing shall be informal, and the rules of evidence shall not be strictly applied except as necessitated in the opinion of the hearing officer," § 22–63–302(7)(a), 9 C.R.S. (1990 Supp.); and that "[t]he chief administrative officer shall have the burden of

---

7. As applied to school board actions under the 1967 Act, the relevant inquiry under § 24–4–106(7), 10A C.R.S. (1988), of the Administrative Procedure Act, is whether the school board abused its discretion. *See Blaine v. Moffat County Sch. Dist. RE–1,* 748 P.2d 1280, 1292 (Colo.1988); *Hudson v. Board of Educ., Huerfano Sch. Dist. RE–1,* 655 P.2d 853, 856 (Colo.App. 1982).

8. Because we conclude that the Court of Appeals did not err in failing to review this case under § 22–63–302(10)(c), we do not construe this statutory provision.

9. Because the General Assembly has expressed its intent to have § 22–63–302(10)(c) apply only to dismissals under the 1990 Act, we are not concerned with any constitutional issues regarding retroactive laws. *See* Colo. Const. art. II, § 11 ("[n]o ex post facto law, nor law ... retrospective in its operation ... shall be passed by the general assembly"); *Continental Title Co. v. District Court,* 645 P.2d 1310, 1314 (Colo.1982) (the constitution's proscription prohibits retrospective application of any law "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already [past]").

proving that his recommendation for the dismissal of the teacher was for the reasons given in the notice of dismissal...." § 22–63–302(8), 9 C.R.S. (1990 Supp.). None of these rules appear in the 1967 Act. The adoption by the General Assembly of these procedures constitutes further support for the conclusion that the standard of appellate review adopted in the 1990 Act is applicable only to dismissal proceedings conducted pursuant to that Act.

Snyder argues that because certain portions of the dismissal procedures established by the 1967 Act are identical to dismissal procedures established by the 1990 Act, the school board's action was for all practical purposes conducted pursuant to the 1990 Act and, therefore, the appellate standard of review provided by the latter statute should be applied. We disagree.

Under the 1967 Act, if a school board orders dismissal of a tenure teacher in spite of an administrative law judge's recommendation that the teacher be retained, such school board must "make a conclusion, giving its reasons therefor, that the administrative law judge's findings of fact are not supported by the record made before the administrative law judge...." § 22–63–117(10), 10A C.R.S. (1988). Under the 1990 Act, however, "if the board dismisses the teacher over the hearing officer's recommendation of retention, the board shall make a conclusion, giving its reasons therefor, which must be supported by the record...." § 22–63–302(9), 9 C.R.S. (1990 Supp.). The 1990 Act requires a school board to emphasize the articulation of its reasons for dismissing a teacher rather than to describe what it finds to be discrepancies in the factual findings of the administrative law judge. Thus a school board's reviewing role under the 1990 Act differs somewhat from such role under the 1967 Act, contrary to Snyder's argument.

Snyder suggests that the description of a school board's ultimate decision-making responsibilities under the 1967 Act articulated by this court in *Blaine v. Moffat County School District RE–1*, 748 P.2d 1280 (Colo.1988), supports her argument that the 1990 Act's appellate review standard should be applied here. We disagree.

In *Blaine*, we affirmed a school board's decision to dismiss a tenure teacher although the hearing officer conducting the requisite administrative proceeding had recommended retention and a sanction consisting of a short suspension. We held that the 1967 Act vests a school board with authority to reject a hearing officer's ultimate findings and recommendation of retention, make new ultimate findings, and order dismissal. *Blaine*, 748 P.2d at 1290. However, we also noted that the new ultimate findings must be "fully warranted" by the evidentiary findings of the hearing officer and that the school board must state the reasons for its new findings of ultimate fact. *Id.*

As Snyder suggests, *Blaine* recognized a school board's authority under the 1967 Act to do what is now authorized expressly by the 1990 Act—to adopt the findings of historical fact found by the presiding official at the required administrative proceeding, and when rejecting a recommendation of retention, to articulate its reasons for such determination.

However, even if it is assumed that a school board's decision-making authority is identical under both statutes, that fact does not support the conclusion that the standard of appellate review established by the 1990 Act can be applied to dismissal proceedings conducted prior to the adoption of that Act. The two appellate standards differ, as we have noted. In addition, as also noted, administrative hearings conducted pursuant to the 1990 Act will be done so in conformance with procedural requirements not required by the terms of the 1967 Act. Most importantly, the language of the 1990 Act requires the conclusion that its appellate review standard applies only to proceedings conducted pursuant thereto. It is noteworthy that in *Blaine* we applied the abuse of discretion standard of appellate review provided by section 24–4–106(7), 10A C.R.S. (1988). *Blaine*, 748 P.2d at 1292.

For the foregoing reasons, we conclude, contrary to Snyder's argument, that the

standard of appellate review contained in section 22–63–302(10)(c) of the 1990 Act is not applicable to the school board's order here. The Court of Appeals correctly applied the standard of appellate review provided by the 1967 Act.

## III

■ Snyder argues that the school board's determination that the lapse in Snyder's teaching certificate constituted other good and just cause for dismissal is not fully warranted by the evidentiary findings of the ALJ. We disagree.

■ A school board by necessity exercises broad discretion in placing and implementing educational programs for its community, including authority to define the grounds for dismissal of tenure teachers. *Ricci v. Davis*, 627 P.2d 1111, 1118 (Colo. 1981). *Accord Board of Educ. v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). While a school board's exercise of its discretion to define grounds for dismissal is subject to judicial review, a reviewing court may not freely substitute its judgment for a school board's appraisal of the harm inflicted on the school community by particular instances of teacher conduct. *Ricci*, 627 P.2d at 1118. *See also Blair v. Lovett*, 196 Colo. 118, 124, 582 P.2d 668, 672–73 (1978).

The 1967 Act provides a two-stage process for consideration of charges of dismissal. The first stage includes a hearing before an administrative law judge to determine whether allegations of specified grounds for dismissal of a tenure teacher can be established by a district. § 22–63–117(5), 9 C.R.S. (1988). The administrative law judge must review the evidence, assess the credibility of witnesses, weigh conflicting evidence, draw reasonable inferences from the facts, make written findings of both evidentiary and ultimate fact, and make a recommendation that the teacher either be dismissed or retained. § 22–63–117(8), 9 C.R.S. (1988); *Blaine*, 748 P.2d at 1286–87. A finding of evidentiary fact "involve[s] the raw, historical data underlying the controversy and represent[s] a determination of what the teacher actually did or

did not do during the incident in question." *Blaine*, 748 P.2d at 1287. A finding of ultimate fact "involves a conclusion of law or at least a determination of a mixed question of law and fact and settles the rights and liabilities of the parties." *Id.*

■ The second stage in the process requires a school board to review the administrative law judge's findings of evidentiary and ultimate fact and recommendation. § 22–63–117(10), 9 C.R.S. (1988). After conducting such review, a school board may dismiss the teacher, retain the teacher, or place the teacher on one-year probation. *Id.* If the administrative law judge's findings of evidentiary facts are supported by substantial evidence, the school board must base its ultimate determination only upon those findings and not on some other evidentiary basis. *Blaine*, 748 P.2d at 1288. However, in view of the broad discretion retained by school boards to determine grounds for dismissal and the ultimate authority of school boards to determine whether a tenure teacher should be retained or dismissed, a school board may reject a hearing officer's findings of ultimate fact, enter new findings of ultimate fact and order dismissal of a tenure teacher, so long as the new ultimate findings are fully warranted by the evidentiary findings of the hearing officer and the school board states the reasons for its conclusions. *Id.* at 1290. *See also Lovett*, 196 Colo. at 124, 582 P.2d at 672 ("we must also take care not to unduly restrict the board's ultimate authority, for there is no indication of a legislative intent to delegate that authority to the [administrative law judge]").

In this case, the school board accepted the ALJ's findings of evidentiary fact and concluded that such findings supported the conclusion that Snyder should be dismissed for other good and just cause. The school board stated that its conclusion was based on the facts that Snyder was advised of the pending expiration of her teaching certificate and that failure to renew the certificate would result in suspension without pay; that Snyder was afforded an opportunity to present evidence of a valid teaching certificate but failed to do so; that Snyder

did not commence course work to renew her certificate until her employment had been terminated by the district; that Snyder did not receive a new certificate until after the school board ratified her termination; that the school board's policy was to confirm the facts or circumstances relative to the progress of a teacher's effort to renew a teaching certificate prior to informing the teacher not to report to work; and that in two prior instances the district had terminated uncertified teachers.

Under these circumstances, while a contrary conclusion might also find support in the ALJ's findings of evidentiary fact, we conclude that the school board's order dismissing Snyder was fully warranted. Snyder's failure to acquire a teacher's certificate was the result of Snyder's personal decision. Although the school board filled the position vacated by Snyder's absence, it offered Snyder a different position. Snyder did not accept that offer. Under these circumstances, we find no support for Snyder's suggestion that the members of the Board merely exercised their personal moral· judgments. *See Weissman v. Board of Educ. of Jefferson County Sch. Dist. No. R–1*, 190 Colo. 414, 421, 547 P.2d 1267, 1273 (1976).

■ The Teacher Certification Act of 1975, §§ 22–60–101 to –110, 9 C.R.S. (1988), provides:

It is declared to be the policy of the state of Colorado to provide quality education in the schools of the state and, to this end, to provide a process for the evaluation and revision of the standards for the certification of teachers and to encourage the professional development of teachers.

§ 22–60–102(1), 9 C.R.S. (1988). Snyder was required to hold a valid certificate during all periods of employment with the district. § 22–63–104, 9 C.R.S. (1988). With exceptions not here relevant, a school board may not enter a teaching contract with a person who does not hold or is not entitled to acquire a teacher's certificate. § 22–63–103, 9 C.R.S. (1988). Thus a teacher who does not hold a current teacher's certificate jeopardizes his or her ability

to execute a contract of employment and, in some circumstances, may be subject to dismissal. *Frey v. Adams County Sch. Dist. No. 14*, 804 P.2d 851, 855 (Colo.1991). In this case, the school board stated the reasons for its determination to dismiss Snyder, and the ALJ's findings of evidentiary fact support that determination.

Had Snyder been on leave of absence at the time she was discharged, or had she been prevented from renewing her certificate because of temporary illness, the school board's order of dismissal on the ground of failure to hold a valid certificate by the time she was ordered to report to work might well be viewed differently. *See* § 22–63–116, 9 C.R.S. (1988) ("[n]o tenure teacher shall be dismissed for temporary illness, [or] leave of absence previously approved by the board...."). However, Snyder's authorized leave of absence expired at the conclusion of the 1983–84 school year. Although on September 4, 1984, she requested an extension of that leave, the request was never granted. Thus her authorized leave had terminated prior to the district's decision to dismiss her effective October 9, 1984. The ALJ's findings of evidentiary fact do not support the conclusion that Snyder was prevented by temporary illness from renewing her certificate.

The Court of Appeals concluded that under all of the circumstances here present, the school board's determination that the lapse in Snyder's teaching certificate constituted other good and just cause warranting her dismissal is fully warranted by the record. That court applied the appropriate standard of review and, in our view, did not err in its conclusion.

### IV

The judgment of the Court of Appeals is affirmed.

Justice ERICKSON specially concurs.

Justice ERICKSON specially concurring in the result:

I agree with the analysis of the court of appeals. *Snyder v. Jefferson County*

*School Dist. R–1,* 821 P.2d 840 (Colo.App. 1991). Because of the undisputed facts in this case, I would not go beyond affirming the school board's determination that the petitioner: (1) had been on medical leave for over one year; (2) had allowed her teaching certificate to expire by failing to take timely steps to renew her certification; and (3) failed to report for her assigned work following her leave of absence. In my view, on the basis of these facts alone, the school district properly dismissed the petitioner, as a tenured teacher, for "other good and just cause" pursuant to section 22–63–116, 9 C.R.S. (1988). The petitioner's "sex reassignment" surgery is irrelevant under the circumstances presented in this case.

The petitioner took a leave of absence at the end of the 1982–83 school year and was advised by the school district, over one year prior to her termination, that her teacher certification would expire on December 30, 1983. After her initial year of leave, the petitioner sought an extension on

an unpaid leave of absence basis which was properly denied by the school district.[1] Thereafter, after being warned by the school district of the consequences of failing to maintain her certification and being offered a position as a junior high school teacher, the petitioner was terminated when she failed to seek recertification or commence work as directed. However, once she was terminated by the school district, the petitioner did undertake to obtain her recertification and was able to complete the work in only 21 days.

In my view, nothing presented by the petitioner justifies or provides a legal basis for overturning her termination by the school district and I would affirm the judgment of the court of appeals.

---

1. In applying for an extension of her unpaid leave of absence, the petitioner submitted a report to the district that was signed by a person identifying herself as the petitioner's "primary therapist" and by a doctor identified as a "case supervisor." Nothing in the report indicated that the petitioner was suffering from any physical or mental disability, that she was unable to teach, or that the contemplated surgery was not elective. In addressing the propriety of the district's denial of the petitioner's request for extended leave, the Administrative Law Judge stated that:

> Nothing in this letter indicated to a layman that surgery was immediately required or that [the petitioner] was not mentally or physically capable to begin work in the fall of 1984....

[The petitioner] has presented no legal authority that in making its determination the District was required to conduct its own investigation or go beyond the information provided by [the petitioner]. In fact, any such requirement would not be reasonable. Where a teacher asks the District to consider requests for leave extension on its merits, the burden would seem clearly to be on the teacher to provide sufficient information for the District to make that determination. In addition, this determination must be based upon the information on hand at the time of the decision; the District should not be second-guessed by the latter testimony of experts as to what was a medically necessary or compelling procedure.